# Exhibit 2

# Filed *Ex Parte* and Under Seal

# [Form 88B document subpoena, followed by its schedule]

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Massachusetts

| | | |
|---|---|---|
| In re Ex Parte Application of CFE International LLC | ) | |
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Denham Capital Management LP
_____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedules A and B.

| Place: CHOATE HALL & STEWART LLP<br>Two International Place<br>Boston, MA 02110 | Date and Time: |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
CFE International LLC _____ , who issues or requests this subpoena, are:
Diana Lloyd, Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110, dlloyd@choate.com, 617-248-5163

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Denham Capital Management LP _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*

                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

<u>**SCHEDULE A**</u>

**A.      Definitions and Rules of Construction**

1.      This subpoena for documents incorporates by reference the uniform definitions for "communications," "concerning," "document," "identify," "parties," and "person," set forth in Rule 26.5 of the Local Rules of the United States District Court for the District of Massachusetts. An earlier draft of a document is a separate document.

2.      The words "any," "all," and "each" shall mean any, all, each, and every.

3.      "CFE" means the *Comisión Federal de Electricidad*, its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, and acquired entities, whether incorporated or unincorporated, including, but not limited to, CFE International LLC ("CFEi"), and any director, officer, employee, consultant, or agent acting on behalf of the *Comisión Federal de Electricidad*, its subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, and acquired entities, whether incorporated or unincorporated, including, but not limited to, CFE International LLC.

4.      "Denham" or "You" means the legal entity constituted as Denham Capital Management LP, its parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, and acquired entities, whether incorporated or unincorporated, and any director, partner, officer, employee, shareholder, consultant, or agent acting on behalf of Denham.

5.      "Entity" means any legal entity, including, without limitation, any corporation, company, limited liability company, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

6.       "Information" shall mean information in any form whatsoever, including but not limited to documentary, electronic, graphical, tabular, and physical forms.

7.       "Related to" and "relating to" mean in whole or in part constituting, containing, concerning, embodying, reflecting, describing, analyzing, identifying, stating, referring to, dealing

1

with, or in any way pertaining to.

8.      "Waha Connector" means the pipeline constructed by WWM connecting the Natural Gas Pipeline Company of America pipeline to the Trans-Pecos Pipeline Waha Header in Pecos County, Texas.

9.      "Waha Connector Agreements" mean all of the agreements executed between CFE and WWM on December 9, 2016, in which CFE awarded WWM the rights to construct, transport, and market capacity on the Waha Connector, including the negotiations surrounding these agreements.

10.     "Waha Supply RFO" means the request for offers issued by CFE on July 29, 2016, seeking offers to provide a long-term supply of gas to be delivered at the TransPecos Pipeline Waha Header located near the Waha Hub in Pecos County, Texas.

11.     "WWM" means the legal entity constituted as WhiteWater Midstream LLC, its parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, and acquired entities, whether incorporated or unincorporated, and any director, shareholder, officer, employee, consultant, or agent acting on behalf of WWM.

**B.      Instructions**

The following instructions apply:

1.      Each Request shall be answered pursuant to Federal Rule of Civil Procedure 45.

2.      In responding to each Request, You shall state which documents and things You will produce for inspection and copying.  If You object to a particular request, You shall state the precise grounds upon which the objection rests.

3.      If You know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in Your

2

possession, custody, or control, You shall so state and shall identify such document or things, and the person who has possession, custody or control of the documents or things.

4.      If no documents or things are responsive to a particular Request, You shall state in Your response that no responsive documents or things exist.

5.      If You withhold any documents, things, or information based upon a claim of privilege or any other claim of immunity from discovery, then You shall produce a privilege log that describes the nature of the information not produced or disclosed pursuant to Federal Rule of Civil Procedure 45(e)(2), including the following information:

> a.  the document request(s) that the purportedly privileged document is responsive to;
>
> b.  the author(s) of the document;
>
> c.  the address(es) of the author(s);
>
> d.  the current custodian of the document;
>
> e.  the date of the document;
>
> f.  the subject matter and title of the document;
>
> g.  the number of pages in the document;
>
> h.  the distribution fields, including To/From/CC/BCC and the members of any group listservs;
>
> i.  the name of the file or folder in which the document is or was located; and
>
> j.  the specific grounds on which the privilege has been asserted and, if the privilege is governed by state law, the state's privilege rule being invoked.

6.      If You contend that a portion of a document contains information that is immune from discovery, then You shall produce the document with the allegedly immune portion redacted

3

therefrom and describe the redacted portion in a privilege log pursuant to the instructions in paragraph 5 immediately above.

7.      All documents that are physically attached to each other when located for production shall be left so attached.  Documents that are segregated or separated from other documents, whether by inclusion of binders, files, subfiles, or by use of dividers, tabs, or any other method, shall be left so segregated or separated.  Documents shall be produced in the order in which they were maintained, in the file where found.

8.      Except as specified elsewhere in the Request, all electronically stored information covered in the Request shall be produced in accordance with the specification in Schedule B.

9.      The document requests in this subpoena are continuing in nature. To the extent you locate or become aware of additional responsive documents at any time, please produce them promptly.

**C.      Time Period**

Unless otherwise specified, the time period covered by this Subpoena shall be from January 1, 2016 to February 28, 2019.

**D.      Documents to be Produced**

**REQUEST NO. 1.**   Documents sufficient to show whether Guillermo Turrent Schnaas ("Turrent"), Javier Gutierrez Becerril ("Gutierrez"), or any entities controlled by either of them, ever held any ownership stake in Denham.

**REQUEST NO. 2.**   Documents sufficient to show any personal and professional relationship between any director, partner, officer, employee, shareholder, consultant, or agent acting on behalf of Denham and CFE, WWM, Turrent, Gutierrez, or Matthew Calhoun.

**REQUEST NO. 3.**   All documents and communications concerning Denham's decision to

4

invest in WWM, including any materials provided by WWM, CFEi, Turrent, or Gutierrez to Denham about CFE and its projects.

**REQUEST NO. 4.**    All documents and communications concerning Denham's investment in WWM and WWM projects, including any investment vehicles (including their ownership structures) it employed.

**REQUEST NO. 5.**    All documents and communications concerning Denham's decision to sell its interest in WWM on or about February 4, 2019.

**REQUEST NO. 6.**    All documents and communications concerning: (1) the Memorandum of Understanding between WWM and CFEi dated May 30, 2016; (2) the August 12, 2016 "Precedent Agreement" between WWM and CFE; (3) the Waha Connector Agreements; and (4) the Waha Supply Request for Offer.

**REQUEST NO. 7.**    Documents sufficient to identify the names of investors in WWM and in each of WWM's projects, as well as the ownership structure of each of these investors.

**REQUEST NO. 8.**    All documents and communications concerning a meeting, the attendees of which included Turrent, and any director, partner, officer, employee, shareholder, consultant, or agent acting on behalf of Denham, that took place in or around May 2016, including any documents created in preparation for this meeting or providing a summary or account of the meeting.

**REQUEST NO. 9.**    All documents and communications relating to expected or consummated transactions with CFE.

5

**<u>SCHEDULE B</u>**

**Document Production Format**

I.     Overview

    A.    All documents shall be produced as Bates-stamped tagged image file format ("TIFF") images along with an image load/cross reference file, a data load file with fielded metadata, and document-level extracted text for electronically stored information ("ESI") or optical character recognition ("OCR") text for scanned hard copy documents and non-searchable ESI.   Details regarding requirements, including files to be delivered in native format, are below.

II.     TIFF Image Requirements

    A.    All documents shall be produced as TIFF images in 300x300 dpi Group IV single-page monochrome format.

    B.    All such images shall be sequentially Bates-stamped using a consistent length with leading zeros in the number.   The format of the Bates numbers shall not change across productions.

    C.    Images shall include the following content where present:

        1.    For word processing files (*e.g.,* Microsoft Word) – Comments and "track changes" (and similar in-line editing).

        2.    For spreadsheet files (*e.g.,* Microsoft Excel) – Hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).

        3.    For presentation files (*e.g.,* Microsoft PowerPoint) – Speaker notes and comments.

    D.    Reasonable care shall be taken not to degrade the legibility of documents during the imaging process.   If legibility is found to have been degraded, the receiving party may make reasonable requests for re-production of these documents.

III.     Native Format Requirements

    A.    Spreadsheet files

        1.    Spreadsheet files (*e.g.,* Microsoft Excel) shall be provided in native format.

        2.    In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

3.    When redaction is necessary, a redacted TIFF image version shall be produced. The parties reserve the right to request access to the native format versions of such files.

B.    PowerPoint files

1.    PowerPoint files (*e.g.*, Microsoft PowerPoint) shall be provided in native format.

2.    In addition to a native format version of each PowerPoint file, a Bates-stamped single-page joint photographic experts group ("JPEG") version shall also be produced.

C.    Multimedia files

1.    Multimedia files (*e.g.,* audio or video files) shall be provided in native format.

2.    In lieu of a TIFF image version of each multimedia file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

3.    The parties reserve the right to edit multimedia files using industry standard methods if redaction of such files is deemed necessary.

D.    Other files

1.    In limited circumstances, it may be necessary to obtain or view the native format versions of files, including color documents/images and dynamic files, such as databases. The parties reserve the right to reasonably request access to the native format versions of such files and/or an image format that supports viewing color documents.

IV.    Image Load/Cross Reference File Requirements

A.    A single-page image load/cross-reference file shall be provided with each production.

B.    The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("MSC001" in the sample .opt file) is optional:

*Sample Concordance Image Viewer .opt file:*
MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

2

V.   Extracted Text/OCR Requirements

   A.   Extracted text and/or OCR text shall be provided for all documents as separate, document-level text files; extracted text and/or OCR text shall not be embedded in the .DAT file (as defined below).

   B.   Document-level text file names shall consist of the beginning Bates number information of the document.

   C.   If a document is provided in native format with a single-page placeholder TIFF image (*e.g.,* spreadsheet files), the text file shall contain the full extracted text of the native file.

   D.   OCR text shall be provided for all redacted documents in lieu of extracted text.

   E.   With respect to produced text files, the specifications herein address ANSI text-based productions.   Unicode text-based productions shall be provided for productions containing non-English language documents.

VI.   Data Load File Requirements

   A.   A data load file shall be provided with each production.

   B.   The file shall be a Concordance-loadable data file ("".DAT"" file) and contain Bates-stamp and metadata information as detailed below.

   C.   The delimiters and qualifiers to be used in the .DAT file are:

   *Record delimiter:*   Windows newline/Hard return (ASCII 10 followed by ASCII 13)
   *Field delimiter:*   (ASCII 20)
   *Multi-value delimiter:*   Semicolon ; (ASCII 59)
   *Text qualifier:*   Small thorn þ (ASCII 254)

D.   With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

E.   The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| BegBates | Beginning Bates number. | All. |
| EndBates | Ending Bates number. | All. |
| BegRange | Bates number of first page of family range (*e.g.,* first page of an email). | All. |

3

| Field | Comments | Document Types |
|---|---|---|
| EndRange | Bates number of last page of family range (*e.g.*, last page of last attachment to an email). | All. |
| PageCount | Number of TIFF image pages in the produced document. | All. |
| FileExtension | File extension of the original document (*e.g.*, .msg, .docx, .jpg). | All. |
| FileSize | File size of the original document. Format: bytes. | All. |
| Title | Title of the original document. | Loose files and attachments. |
| Custodian | Custodian full name. Format: LASTNAME, FIRSTNAME. | All. |
| AllCustodian | Full name of all custodians for whom the document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| Author | Author of document from available metadata. | Loose files and attachments. |
| LastSavedBy | Last Saved By field value extracted from metadata of a native file. | Loose files and attachments. |
| Company | Company field extracted from the metadata of a native file. | Loose files and attachments. |
| From | Email author. | Email only. |
| To | Email addressee(s). | Email only. |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date. Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time. Format: HH:MM:SS AM/PM | All. |
| DateModified | File modification date. Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time. Format: HH:MM:SS AM/PM | All. |
| DateSent | Email sent date. Format: MM/DD/YYYY. | Email only. |
| TimeSent | Email sent time. HH:MM:SS AM/PM. | Email only. |
| DateReceived | Email received date. MM/DD/YYYY. | Email only. |
| TimeReceived | Email received time. HH:MM:SS AM/PM. | Email only. |
| DateAccessed | Date document was last accessed. | All. |
| TimeAccessed | Time document was last accessed. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |

| Field | Comments | Document Types |
|---|---|---|
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (e.g., GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (e.g., <0E6648D558F338179524D555@m1p.contoso .net). | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from email messages. | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions. Folder paths to this document's duplicates and the original path. Each path will contain the associated custodian. | All. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. | Loose files and attachments. |
| MD5Hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the extracted text or OCR for the document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the document, including the file name (if a native-format file is provided). | Loose files and attachments. |

F.   The parties shall de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching. Email attachments shall not be eliminated from the parent email. Hard copy documents shall not be eliminated as duplicates of responsive ESI.

G.   In globally de-duped, incremental productions, there will be instances when production of documents from additional custodians will include documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with updated AllCustodian and

AllFilePaths fields; BegBates and EndBates fields may be used as the unique identifiers.

VII.   Miscellaneous

    A.    All document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.

    B.    Embedded documents shall be extracted from the parent document with family relationship intact.

    C.    Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

    D.    If particular documents warrant a different format (*e.g.*, production of color images instead of black and white), the parties shall cooperate to arrange for the mutually acceptable production of such documents.

    E.    The parties agree not to knowingly degrade the searchability of documents as part of the document production process. For example, extracted text should not be replaced by OCR text except where appropriate (*e.g.*, OCR for redacted documents).

    F.    Redacted documents may have certain metadata fields withheld from production. The parties shall cooperate to create a list of metadata fields which may be produced for these documents.

    G.    All documents shall be processed so as to normalize the time zone.