**IN THE UNITED STATES
DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>CFE International LLC,<br><br>        Applicant,<br><br>Denham Capital Management LP,<br><br>        Respondent. | Case No.<br><br>**DECLARATION OF FERNANDO APONTE MARTINEZ IN SUPPORT OF CFE INTERNATIONAL LLC'S APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 PERMITTING IT TO ISSUE A SUBPOENA FOR THE TAKING OF A DEPOSITION AND THE PRODUCTION OF DOCUMENTS FROM DENHAM CAPITAL MANAGEMENT LP** |

**FILED EX PARTE AND UNDER SEAL**

I, FERNANDO APONTE MARTINEZ, hereby declare the following:

1. I am an individual over the age of 18 and, if called upon, could testify to all matters set forth in this Declaration. The facts stated herein are derived from my own personal knowledge and are true to the best of my knowledge, information and belief. To the extent that the facts stated herein are derived from information supplied to me by others, they are true to the best of my knowledge, information and belief.

2. I hold a bachelor's degree in law, and I am licensed to practice in Mexico under professional license number 4509853. My degree was issued by the Escuela Libre de Derecho de Puebla A.C. in the City of Puebla, Mexico. I earned a master's degree in criminal law and criminology at the Centro de Ciencias Jurídicas de Puebla A.C., in Puebla, Mexico and I am currently pursuing a doctorate in law at the same educational institution. 

3. I have practiced law in Mexico for 23 years. I specialize in litigation in the courts of Mexico in criminal and civil matters, acting as an attorney representing individuals and corporate entities. I also provide consultancy services in anti-corruption and compliance matters.

4. I currently hold the position of Director of Compliance and Responsibilities at CFEnergía S.A. de C.V. ("CFEn"), a Mexican subsidiary[1] of the Comisión Federal de Electricidad ("CFE"). I also hold the position of Chief Litigation Affairs Officer at CFE International LLC ("CFEi"), a U.S. subsidiary of CFE, with its principal place of business in Houston, Texas.

5. On August 4, 2021, in my capacity as Chief Compliance Officer ("CCO") of CFEi—a position I then held—I filed with the Special Anti-Corruption Prosecutor of the Mexican Attorney General's Office ("FGR"), María de la Luz Mijangos Borja, a criminal complaint (the

---

[1] Mexican law recognizes what are known as "productive subsidiary companies" (e.g., electrical power generation companies, discussed below) and "affiliates" (e.g., CFEn and CFEi, discussed in this paragraph). Because I am told that the distinction is not recognized under U.S. law, I refer to both as "subsidiaries" herein.

"Criminal Complaint") against three subjects with probable responsibility, Guillermo Turrent Schnaas ("Turrent"), Javier Gutierrez Becerril ("Gutierrez"), José Guadalupe Valdez García, and all those who may have been involved in the unlawful procurement of the contracts that CFEi entered into on December 9, 2016 (the "Waha Connector Agreements") with WhiteWater Midstream, LLC and its subsidiaries (collectively, "WWM").

### The Formation and Purpose of CFE International LLC

6.   In 2014, the administration of Mexico's former President Enrique Peña Nieto instituted a broad energy reform through amendments to the Constitution and substantial changes to the regulatory framework with the purpose of opening the Mexican energy sector to large-scale private investment for the first time in over seventy years.



7.   CFE is a Mexican electric power utility company, wholly owned by the federal government. CFE is its own legal entity with assets. It enjoys technical, operational, and managerial autonomy in accordance with the provisions of the *Ley de la Comisión Federal de Electricidad* ("CFE Law").

8.   It was during this period of deregulation and foreign investment in the energy sector that Turrent and Gutierrez joined CFE to lead its Modernization Department as Director and Sub-Director of Modernization, respectively. The Modernization Department was created to take advantage of CFE's newly expanded reliance on natural gas, including from U.S. sources. Turrent joined CFE in January 2013. Gutierrez joined CFE after Turrent in April 2014. As leaders of the Modernization Department, Turrent and Gutierrez were entrusted with the creation of CFE's U.S.-based subsidiary, CFEi, to procure a reliable and affordable natural gas supply in the U.S. for use in Mexico.

9. CFEi was incorporated on January 20, 2015 and organized under the laws of the State of Delaware by Enrique Ochoa Reza, the then-General Director of CFE, in exercise of CFE's power to form subsidiary companies pursuant to article 57 of the CFE Law. *Ley de la Comisión Federal de Electricidad* [CFE Law], art. 57, DOF 11-08-2014, *sin reformas* (Mex.) (attached as Exhibit 1, with English translation).

10. CFEi was created to manage CFE's U.S. natural gas pipeline transportation agreements and to procure reliable and affordable long-term natural gas supply in the U.S. for export to Mexico. Accordingly, after purchasing gas in the U.S., CFEi then sells it to CFEn, which in turn sells it to other subsidiaries of CFE—power generation companies called "GenCos" that convert the gas into electricity for sale to Mexican consumers.

11. A few days after incorporation, CFEi held its first Board of Directors meeting on June 15, 2015, at which Turrent was present in his capacity as a non-voting Board member—a position he held as a consequence of his position as CFEi's Chief Executive Officer ("CEO"). Pursuant to the 2015 CFEi LLC Agreement, the Board's governance responsibilities include "monitoring and managing potential conflicts of interest, including misuse of corporate assets and abuse in related party transactions." Directors are also required to disclose to the Board any financial or personal interest they may have in any contract or transaction being considered by the Board. The Board is responsible for reviewing all major plans of action and transactions, as well as guiding corporate strategy.

12. The Board of Directors of CFEi approved the appointments of executives at this first meeting, including that of Turrent as Director General (or CEO), of Gutierrez as Chief Operating Officer ("COO"), and of others in the roles of Chief Legal Officer, Secretary, and Chief Technology Officer.

4

13. After incorporation, CFEi sought to develop its infrastructure and establish its natural gas marketing and trading operations. As it aimed to optimize the transportation capacity in existing CFE contracts, as well as to prepare the framework to enter into construction, supply, and transport contracts of its own on behalf of CFE, CFEi management worked internally as well as with external advisors on various considerations that arose, such as regulatory, tax, and legal questions, as well as risk management, procurement, logistics, strategy, and training.

### Mexican Tender and Procurement Law

14. The Political Constitution of the United Mexican States ("Mexican Constitution") requires all federal, state, and municipal officials, civil servants, and entities to manage public resources with "efficiency, economy, transparency, and honesty" and holds them accountable for violations of this requirement. Constitución Política de los Estados Unidos Mexicanos [CPEUM], art. 134, Diario Oficial de la Federación [DOF] 05-02-1917, latest amendments DOF 28-05-2021 (Mex.) (attached as Exhibit 2, with English translation). To meet these constitutional standards, all contracts must be awarded "by open tenders, where bidders submit their sealed bids. These sealed bids will be opened in public for scrutiny and to guarantee that the State receives the best market conditions available in regard to price, quality, financing, opportunity, and other appropriate conditions."[2] *Id.*

15. The CFE Law implements and regulates the constitutional tender requirement applicable to CFE and its subsidiaries. CFE Law, arts. 77–88. The CFE Law establishes various requirements designed to ensure that CFE and its subsidiaries award all contracts through

---

[2] The Constitution provides for certain exceptions to the procurement requirements when the tender is not appropriate to guarantee the best market conditions available, but states that these exceptions are still governed by laws that require a good price, effectiveness, efficiency, impartiality and honesty in this process. *See* CFE law, and 2015 Tender Guidelines, *infra* at 6–7.

transparent, competitive, and public processes that provide bidders with equal opportunity. *Id.*, art. 78. Accredited third parties called "social witnesses" are required to observe and report on every stage of the tender and procurement process. *Id.* CFE and its subsidiaries are directed to refrain from entertaining proposals from or entering into contracts with individuals or entities who may present a conflict of interest with CFE. *Id.* CFE and its subsidiaries are directed to evaluate and consider a bidder's technical and financial capacity, its previous experience, credit history, and its compliance with tax and labor laws. *Id.*, art. 85. CFE is also required to maintain a publicly available database with information regarding tender processes, bidders, providers, and contractors for at least the preceding five years. *Id.*, art. 87.

16.   The CFE Law provides for three possible forms of tender and procurement of contracts. The default and preferred method is through an open public tender process using pre-established, objective criteria. *Id.*, art. 79. When an open tender either fails to solicit an acceptable bid or the contractual need is such that no alternative goods or services exist, or for other limited and specific exceptions set out in article 80 of the CFE Law, CFE and its subsidiaries may forgo a public tender process in favor of a restricted invitation process. *Id.* 81. However, the invitation process also must abide by the same constitutional transparency principles. Therefore, CFE is still required to publish the names of the invited bidders so that any person may provide information to CFE regarding the suitability of the bidders. *Id.* The third procurement option is through direct award of the contract. *Id.*, art. 80. Direct award of contracts is acceptable when the winning bidder of a contract withdraws its bid and the contract is directly awarded to the runner-up, and in certain limited exceptions set out by the law, including for reasons of national security. *Id.*

17.   All contract processes were also subject to the provisions of Mexico's *Ley Federal Anticorrupción en Contractaciones Públicas* ("Federal Law on Anticorruption in Public

6

Procurement"). CFE Law, art. 88. This law was in effect from June 11, 2012 until July 18, 2016, and established liabilities and penalties for foreign and Mexican individuals and corporations who engage in corrupt or fraudulent activities aimed at obtaining or bestowing an unlawful advantage in the procurement of public contracts. *Id.* On July 18, 2016, Mexico's *Ley General de Responsabilidades Administrativas* ("General Law on Administrative Responsibilities") superseded the Federal Law on Anticorruption in Public Procurement and provides for similar requirements for public servants to manage public resources responsibly and free of corruption, and penalties if they do not do so. *Ley Federal Anticorrupción en Contractaciones Públicas* ("Federal Law on Anticorruption in Public Procurement"), Artículo Transitoria Tercero, DOF 11-06-2012, últimas reformas DOF 18-07-2016 (Mex.); *Ley General de Responsabilidades Administrativas* ["General Law on Administrative Responsibilities"], arts. 7.VI, 64, 81, DOF 18-07-2016, últimas reformas DOF 22-11-2012 (Mex.).

18.  Further, effective June 23, 2015, CFE's Board of Directors issued binding guidelines further regulating the tender and procurement requirements for CFE and its subsidiaries. *See* CFE Board of Directors, *Disposiciones Generales en materia de adquisiciones, arrendamientos, contratación de servicios y ejecución de obras de la Comisión Federal de Electricidad y sus empresas productivas subsidiarias*, DOF 23-06-2015 ("2015 Tender Guidelines") (attached as Exhibit 3, with English translation).[3] These guidelines provide detailed instructions on the use of CFE's online tender, bidding, and procurement platform for each of the three types of procurement: public tender, invitation bids, and direct award. 2015 Tender Guidelines, arts. 22–29, 32–43. Among the detailed regulations, the guidelines require that, if CFE

---

[3] The CFE Board of Directors subsequently issued revised guidelines in 2019, which took effect on November 29, 2019.

or its subsidiaries opt to forgo a public tender, they must present a written request to the CFE Board of Directors' Sub-Committee on Exception to Open Tenders for an exception to use either the invitation or direct award procedure, setting out the reasons and justification to use the alternate process. *Id.*, art. 41.

### CFEi's Duty to Report Crimes to the FGR

19.     The Mexican National Code of Criminal Procedure ("CNPP") provides that all persons have the duty to report "all acts that likely constitute a crime" to the FGR. Código Nacional de Procedimientos Penales [CNPP], art. 222, DOF 5-03-2014, latest amendments DOF 19-02-2021 (Mex.) (attached as Exhibit 4, with English translation). Those involved in the discharging of public office who are aware of the probable existence of a fact that constitutes a crime have a heightened duty to "immediately report it to the [FGR], providing all the information they may have" and to "provide all information in their possession" to the FGR. Id. Failure to report a crime when the duty to report it exists shall result in the application of corresponding penalties. Id.

20.     As a wholly owned subsidiary of a Mexican state-owned company created pursuant to Mexican legislation, including the CFE Law, and as an entity that manages funds which emanate from Mexican taxpayers, CFEi, like CFE, is obligated to report likely violations of Mexican criminal law to the FGR. Further, as Mexican citizens, CFEi's directors and officers, responsible for the management of public resources, are also obligated to immediately report probable criminal activity.

### The Rights and Obligations of Complainants and Victims Under Mexican Criminal Law

21.     Pursuant to article 108 of the CNPP, "any individual who directly suffers the consequences of criminal conduct shall be deemed to be a victim of the offense. In addition, any natural or artificial person who owns a legally protected interest that has been damaged or put at

8

risk by the action or omission classified as an offense in criminal law shall be regarded as an injured party." CNPP, art. 108. The concept of "injured party" allows that person to act as a "party" to the criminal proceedings. CNPP, art. 105.

22. The Mexican Constitution and the CNPP protect the rights of the injured party, including the right to "assist the [FGR]; e.g. to receive all information or evidence held by it, both in the investigation and in the proceeding ... and to intervene in the trial and file motions as provided in law." CPEUM, art. 20(C)(II). *See also* CNPP, art. 109(XIV). In other words, the FGR and the Judicial Branch must accept any evidence that the injured party, or anyone acting on behalf of the injured party, seeks to provide to the investigation, including evidence discovered after the initial complaint is filed.

23. Either *pro se* or through their legal counsel, the injured party may act at "any stage of the proceeding." CNPP, art. 110.

### Discovery Under the Mexican Law on Criminal Proceedings

24. The parties to the criminal proceeding, including the FGR and the injured party, "have the right to submit evidence in support of their arguments." CNPP, art. 262. *See also*, CPEUM, art. 20(c)(ii).

25. The FGR and the injured party can offer evidence and means of proof in support of their claims during the investigation, and the injured party is able to otherwise cooperate with the FGR. CNPP arts. 261, 262.

26. After the FGR issues an indictment, the injured party may opt to participate formally in the prosecution as a *coadyuvante*, request corrections to the indictment, and offer additional means of proof that it believes further support the indictment. CNPP, art. 338.

27.     Parties, including a *coadyuvante*, are allowed to present evidence to the court at any time before trial for admission into the record. CNPP, art. 304. Subject to certain exceptions, each party must present the evidence it anticipates using at trial during the "intermediate" or pretrial phase of the criminal process, which follows the conclusion of the investigation. CNPP, arts. 334, 337. The pretrial judge then reviews the evidence submitted to determine whether it is admissible or not. CNPP, art. 346. Four principal categories of information may be excluded: (1) information that is unnecessary because the subject is uncontroverted or a plethora of similar evidence has already been admitted; (2) information that is irrelevant to the events at issue; (3) information that has been declared null; and (4) evidence obtained in violation of the law. *Id. See also Id.*, art. 263 ("information and evidence must be obtained, produced and reproduced lawfully."); 357 ("The evidence will have no value if it has been obtained through acts that violate fundamental rights.")

28.     Because the entity from which CFEi seeks discovery is not a participant in or party to the Mexican Criminal Proceeding, there exists no formal or established discovery mechanism under Mexican law by which CFEi, as the victim and complainant in the proceeding with rights to present evidence and information to the prosecutors, could obtain evidence from that entity.

29.     Mexican criminal procedure law does not impose any other restrictions on the admissibility of evidence in criminal proceedings.

### CFEi's August 4, 2021 Criminal Complaint

30.     Following the change of CFEi's leadership, in December 2020, CFEi's Board of Directors created the office of CCO, to which I was named. Among my first tasks as CCO was to review the status of CFEi's current contracts after learning in December 2020 that Gutierrez had executed the formal assignment of certain CFE contracts to CFEi in February 2017 while asserting the wrong power of attorney and without proper public notarization, significant legal deficiencies

10

under Mexican law. During this review, I further discovered that, in connection with the procurement of the Waha Connector Agreements, there was no evidence that any procurement process that would have guaranteed the best terms for the Mexican State had taken place. The Waha Connector Agreements had been among the contracts assigned to CFEi by CFE in February 2017. During this review, CFEi also discovered it did not have the required documentation of a public procurement process as required by Mexican law. Notably, the Waha Connector Agreements granted WWM the right to construct a connector natural gas pipeline for CFE—the Waha Connector—and to transport natural gas via this pipeline to one of CFE's pipeline header systems called the Waha Header for a term of over twenty years.

31. Upon further investigation, CFEi discovered that Turrent, Director of Modernization at CFE from January 2013 to September 2016 and CEO of CFEi from June 2015 to December 2018, supervised and authorized the contracts, and that Gutierrez, Subdirector of Modernization at CFE from April 2014 to February 2017 and COO at CFEi from June 2015 to December 2018, approved and signed the contracts. Turrent's and Gutierrez's legally mandated declarations filed upon taking and leaving a public service position are attached as Exhibits 5 and 6, with English translations.

32. Additional review of communications and the background of the contracts revealed that WWM, the company which was awarded the Waha Connector Agreements, lacked the requisite experience and credit history for such contracts to be awarded properly and that the provisions of the contracts were not competitive and materially hurt CFE and subsequently CFEi, when it assumed the contracts. At the time these contracts were awarded, WWM had been in operation for only a few months and WWM's affiliates, also awarded the contracts, had been in operation for three days. Moreover, Gutierrez and Turrent committed to award WWM these

contracts prior to soliciting or receiving bids from other entities. As such, the Waha Connector Agreements were awarded to WWM in the absence of the analysis required by law to ensure the State receives the best market conditions available.

33. Finally, investigation into the prior relationship and activities among Calhoun, Gutierrez, and Turrent before the Waha Connector Agreements indicated that there existed a conflict of interest between Calhoun, on the one hand, and Gutierrez and Turrent in their capacities as CFE public servants, on the other, at the time the contracts were awarded. Such a conflict of interest would constitute a violation of Mexican law, which requires that public servants abstain from entertaining, let alone awarding contracts to, bidders that represent a conflict of interest. *See* CFE Law art. 78. The terms of the contracts—over twenty years long and with an estimated revenue to WWM worth hundreds of millions of U.S. dollars—underscore the seriousness of these violations.

34. Given the apparent violations of Mexican procurement law and anticorruption law, I complied with the duty to report pursuant to article 222 of the CNPP. On August 4, 2021, I filed a formal complaint against those accused of corruption to the Special Anti-Corruption Prosecutor at the FGR in Mexico located at Avenida Insurgentes, Número 20 de la Glorieta de Insurgentes, Col. Roma Norte, Ciudad de México. C.P. 06700, Mexico.

### The Mexican Criminal Proceeding

35. Shortly after I submitted the Criminal Complaint, the FGR notified me that it had opened an investigation file into the events and conduct alleged in that complaint. In Mexico, the opening of an investigation file shows that the FGR has begun to investigate allegations in a criminal complaint.

36. Among the powers entrusted to the FGR are the investigation of criminal conduct and the determination of whether to initiate a criminal proceeding against one or more accused individuals. CNPP, art. 131 (attached as Exhibit 7, with English translation). The FGR does not necessarily decide to bring an "*acción penal*," or criminal proceeding, in response to every criminal complaint.

37. In this case, the FGR has decided to bring a criminal proceeding. Specifically, on February 28, 2022, I received a notification from the Administrator of the Federal Criminal Justice Center in Mexico City ("Notice of Hearing"), stating that the FGR had requested an "initial hearing" to present an "*imputación*" against Gutiérrez and Valdez García in relation to the criminal complaint I filed. Presenting an "*imputación*" is the first step the FGR takes in court to begin a criminal proceeding. A copy of the Notice of Hearing, with an English translation, is attached hereto as Exhibit 8.

38. The initial hearing related to the Criminal Complaint occurred on May 23, 2022. The May 23 hearing was held virtually in accordance with the Court's COVID-19 protocols. I joined the hearing, accompanied by CFEi's legal counsel. Other attendees included the judge, his clerk, prosecutors from the FGR, and representatives of CFE and its legal counsel. In addition, each of the accused appeared, one physically present in the same room as his or her counsel, and the other accused and his counsel joined from separate virtual sessions.

39. During the hearing, which lasted approximately one hour, the judge verified the identity of all the participants, confirmed that each "*imputado*," or individual who is the subject of a formal investigation before the proceeding reaches trial, wished for counsel present to represent him, and informed the accused of constitutional and fundamental rights. Before proceeding with the hearing, counsel for the "*imputados*" asked the court to adjourn the hearing because they had recently

received a new expert report from the FGR and had not had time to review it. The court also adjourned the hearing to address an issue related to the accuseds' request that the prosecutors obtain certain contract documents from the United States; the prosecutors had denied that request as irrelevant because the documents were supposed to have been maintained in the accuseds' files in Mexico but had not been. The judge then heard from each of the parties and decided to adjourn the hearing to August 17, 2022, in order to allow the "*imputados*" time to finish reviewing the file and to allow the FGR additional time to finish its initial investigation. Adjournments of an initial hearing occur frequently in Mexico, including, as here, to allow the accused more time to review evidence and prepare their defense. According to the judge's order, the August 17, 2022 hearing will be held in person, unless the court's COVID-19 protocols change. At that hearing, in accordance with article 310 of the CNPP, the FGR will present its "*imputación*" against Gutiérrez and Valdez García. The judge will decide if, in the investigation file, there is enough evidence to accept the "*imputación*" of the accused according to article 19 of the Constitution of Mexico. In its role as a victim, CFEi may continue to present additional evidence to the FGR in advance of the August 17, 2022 hearing, and the FGR can take this evidence into account when formulating its "*imputación*" at the hearing. A copy of the court's May 23, 2022 order issued by the Specialized District Judge in the Accusatory Criminal System, of the Federal Criminal Justice Center in Mexico City, located in the Reclusorio Sur, adjourning the initial hearing to August 17, 2022, with an English translation, is attached hereto as Exhibit 9.

40. Assuming the judge proceeds with the "*imputación*" by means of an order of committal ("Auto de Vinculación al Proceso"), the next step in the process of proceeding to trial, the FGR will engage in a "complementary investigation" that can initially last up to six months, and can be further extended if more time is needed. During the continued investigation, CFEi plans to use all information available to it to strengthen the factual basis for the case, pursuant to

14

CNPP, art. 338 (to "offer the evidence it deems necessary to complement the [FGR's] accusation, of which the accused should be notified"). Subsequently, the FGR will present an "*acusación*," or formal accusation, and the case will proceed to trial to be heard by the trial court. Under Mexican law, the prosecutors are able to introduce not only evidence of specific misconduct alleged, but also evidence of other prior related misconduct.

41. Regardless of whether the judge proceeds with the "*imputación*" by means of an order of committal ("Auto de Vinculación al Proceso") against Gutiérrez and Valdez García, the FGR can continue its investigation related to Turrent.

42. In addition, as a case proceeds to trial, a victim or injured party such as CFEi has the right to provide investigative background, to obtain evidence and, if necessary, means of proof, until the investigation ends and until an *acusación* has been issued in order to proceed with the trial until the trial court issues its judgment. CNPP, art. 337. Once the closing of the investigation and the opening of the trial is declared, the victim or injured party may provide "supervening" evidence (evidence that occurs or becomes known to the parties after the closing of the investigation).

43. CFEi intends to continue its support of the investigation of the Special Anti-Corruption Prosecutor and the pending indictments by supplying any new evidence that comes into its possession and by participating in related future criminal proceedings.

44. Mexican law provides victims and injured parties the right to access documents and information contained in the FGR's investigative file, in addition to the right to submit and share evidence with the FGR. CNPP, art. 218 ("The victim or injured party and their Legal Advisor may have access to the investigation record at any time.") (attached as Exhibit 7, with English translation). However, to protect the integrity of the investigation, Article 218 of the CNPP

imposes a strict duty of confidentiality on the parties and prohibits sharing any part of the investigation file with third-parties. *Id.* ("The investigation record, as well as documents, independent of their content or nature, objects, voice, image, and video recordings, or things that are related to these, are strictly confidential, for which only the parties may access to them."). Accordingly, CFEi is limited in its ability to share information about the FGR's investigation.

45. The ability of the FGR or the Mexican criminal court to obtain evidence directly from any of the accused for use in the proceeding is limited. Under Mexican law, individuals who are under investigation, such as Turrent and Gutiérrez, have the right to remain silent in criminal proceedings such as this one. CPEUM, art. 102; CNPP, art. 113 (accused afforded the right "[t]o declare or to remain silent, on the understanding their silence may not be used against them") (attached as Exhibits 10 and 7 with English translations). This right attaches even before a formal criminal charge or arrest and allows an accused person to refuse to turn over any evidence that might prove their liability for the crimes for which they are being investigated.

46. I have reviewed a certified translation of this declaration into Spanish prior to signing the Spanish and English versions of the declaration.

47. The exhibits attached to this declaration are true and correct copies of the original documents.

48. Wherefore, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

_____
Fernando Aponte Mártínez

Date: 8/7/22